IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CR-116-D-6
No. 7:22-CV-12-D

| | |
|---|---|
| TONY CHEVALLIER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

On January 18, 2022, Tony Chevallier ("Chevallier" or "petitioner") moved pro se under 28

U.S.C. § 2255 to vacate his 360-months sentence [D.E. 1620] and filed a memorandum in support

[D.E. 1621]. On March 1, 2022, the United States moved to dismiss Chevallier's section 2255

motion [D.E. 1633] and filed a memorandum in support [D.E. 1634]. On March 17, 2022,

Chevallier responded in opposition to the United States's motion to dismiss [D.E. 1640]. On August

17, 2022, Chevallier filed a motion for leave to supplement his section 2255 motion [D.E. 1668].

That same day, Chevallier filed a supplement to his section 2255 motion seeking to allege an

additional instance of ineffective assistance of counsel [D.E. 1669]. As explained below, the court

grants Chevallier's motion to supplement, grants the United States's motion to dismiss, and

dismisses Chevallier's section 2255 motion.

I.

Chevallier was a long-time leader and high-level drug dealer who conspired with members

of the Antonio McKoy drug trafficking organization in Sampson County, North Carolina. On May

23, 2018, a jury found Chevallier guilty of conspiracy to distribute and possess with the intent to

distribute 500 grams of methamphetamine and a quantity of marijuana in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). See [D.E. 1045, 1048]. According to the Presentence Investigative Report ("PSR"), Chevallier conservatively possessed or distributed 4.43 kilograms of cocaine, 105 grams of crack, and 3.26 kilograms of methamphetamine. See PSR [D.E. 1280] ¶ 16. Chevallier's counsel objected to the leadership enhancement and drug weights attributed to him. See id. at ¶ 25. After receiving evidence and overruling both objections, the court found Chevallier's total offense level to be 35, his criminal category to be IV, and his advisory guideline range to be 292 to 365 months' imprisonment. See Sentencing Tr. [D.E. 1356] 14–94. After thoroughly considering the arguments of counsel, Chevallier's statement, and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Chevallier to 360 months' imprisonment. See id. at 102–09; [D.E. 1299]; [D.E. 1300]. Chevallier appealed. See [D.E. 1297]. On August 6, 2019, the United States Court of Appeals for the Fourth Circuit affirmed Chevallier's sentence. See United States v. Chevallier, 828 F. App'x 882, 886–91 (4th Cir. 2020) (per curiam) (unpublished); [D.E. 1541]. Chevallier petitioned for writ of certiorari. See [D.E. 1552]. On January 25, 2021, the Supreme Court denied certiorari. See Chevallier v. United States, 141 S. Ct. 1283 (2021); [D.E. 1556].

## II.

Chevallier makes two claims in his section 2255 motion. See [D.E. 1620]. First, counsel was ineffective by failing to seek a continuance based on the imminent passage of the First Step Act. Id. Second, counsel was ineffective by withdrawing Chevalier's motion to continue based on counsel's alleged lack of preparation to advocate concerning the advisory guideline calculation. Id. In Chevallier's motion to supplement, Chevallier also contends that counsel was ineffective by failing to file a motion to suppress a Title III surveillance log. See [D.E. 1669] 2.

2

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a complaint's legal and factual sufficiency. Fed. R. Civ. Pro. 12(b)(6); see Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion, the court is not limited to the motion itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013).

## A.

On direct appeal, Chevallier litigated and lost his attack on counsel's decision to withdraw her oral motion to continue the sentencing hearing. See Chevallier, 828 F. App'x at 890–91. Chevallier cannot use section 2255 to recharacterize and relitigate a claim that he lost on direct appeal. See Bousley v. United States, 523 U.S. 614, 622–23 (1998); United States v. Frady, 456 U.S. 152, 164–65 (1982); Dyess, 730 F.3d at 360; United States v. Roane, 378 F.3d 382. 396 n.7 (4th

3

Cir. 2004); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (per curiam). Thus, Chevallier's ineffective assistance claim concerning counsel's decision to withdraw her oral motion to continue the sentencing hearing fails.

B.

As for Chevallier's ineffective assistance of counsel claims, "[t]he Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including discovery, pretrial motions, trial, sentencing, and appeal. See, e.g., Lee v. United States, 137 S. Ct. 1958, 1964–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001). To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, a defendant must show that his counsel's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984); United States v. Mayhew, 995 F.3d 171, 176 (4th Cir. 2021). Because "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, . . . the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Harrington v. Richter, 562 U.S. 86, 105 (2011) (quotation omitted); see Weaver v. Massachusetts, 137 S. Ct. 1899, 1912 (2017); Jackson v. Kelly, 650 F.3d 477, 493 (4th Cir. 2011).

When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting

4

effects of hindsight." Strickland, 466 U.S. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. A party also must show that counsel's deficient performance prejudiced the party. See id. at 691–96. A party does so by showing that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Id. at 694.

As for Chevallier's argument that his trial counsel was ineffective by failing to seek a continuance based on the imminent passage of the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582), Chevallier argues that his counsel should have moved to continue the sentencing hearing because:

> [V]ersions of the [First Step Act] had passed both the Senate and the House of Representatives and the bill had been reintroduced in the Senate. . . . It was common knowledge among the criminal defense community – and anyone paying attention to the news – that the [First Step Act] was pending and that the provision reducing the enhanced penalties under 21 U.S.C. § 851 that is relevant here would likely be in the final bill, but would not be retroactive.

[D.E. 1612] 20.

Failure to anticipate a change in the law is not ineffective assistance of counsel. See United States v. McNamara, 74 F.3d 514, 516–17 (4th Cir.1996); see also Bajorski v. United States, 276 F. App'x. 952, 953–54 (11th Cir. 2008) (per curiam) (unpublished). Thus, Chevallier's counsel's failure to seek a continuance pending passage of the First Step Act was not deficient performance. See McNamara, 74 F.3d at 516–17.

Alternatively, because the court would not have granted a motion to continue based on the possible passage of the First Step Act, there also was no deficient performance from counsel's alleged failure to seek a continuance. See Sentencing Tr. at 3–9; Strickland, 466 U.S. at 691–96. Counsel knew that the court had discretion to deny such a motion. United States v. Copeland, 707

5

F.3d 522, 530–31 (4th Cir. 2013); see Strickland, 466 U.S. at 694. Moreover, counsel need not make all nonfrivolous motions in order to provide effective assistance. See Knowles v. Mirzayance, 566 U.S. 111, 126–27 (2009). Although President Trump signed the First Step Act into law eight days after Chevallier's sentencing hearing, there was no way for counsel to know on December 13, 2018, if the bill would pass and be signed into law eight days later. Notably, the bill went through numerous forms in the Senate and was ultimately reintroduced as an amendment in a wholly unrelated bill. See generally ProQuest Legislative Insight, First Step Act of 2018, https://congressional.proquest.com/legisinsight?id=PL115391&type=LEG_HIST&accountid=14 6980 (last visited Sept. 2, 2022) (collecting First Step Act legislative history). On this record, counsel did not perform deficiently in failing to seek a continuance based on the possible passage of the First Step Act. See Knowles, 566 U.S. at 126–27; Strickland, 466 U.S. at 691–96; Copeland, 707 F.3d at 530–31. Thus, the claim fails.

Alternatively, even if the court granted a continuance and sentenced Chevallier after the First Step Act passed, Chevallier has not plausibly alleged prejudice. After all, Chevallier has not plausibly alleged that his sentence would have been any different if the court sentenced him after the First Step Act passed. See Sears v. Upton, 561 U.S. 945, 955–56 (2010); Glover v. United States, 531 U.S. 198, 202–04 (2001); Copeland, 707 F.3d at 530–31.

In opposition, Chevallier contends that the First Step Act reduced the low end of his mandatory minimum from 20 years to 15 years. See [D.E. 1621] 19–22. Even if the court assumes that Chevallier is correct about the new mandatory minimum being 15 years instead of 20 years, nothing suggests that this court would have changed Chevallier's 360-months sentence based on a new mandatory minimum of 15 years. Moreover, when sentencing Chevallier, this court announced that it would impose the same 360-months sentence as an alternate variant sentence pursuant to 18

6

U.S.C. § 3553(a) even if it miscalculated the advisory guideline range. See Sentencing Tr. at 107; see also United States v. Hargrove, 701 F.3d 156, 161–63 (4th Cir. 2012); United States v. Savillon-Matute, 636 F.3d 119, 123–24 (4th Cir. 2011); United States v. Keene, 470 F.3d 1347, 1348–50 (11th Cir. 2006). Thus, there is no prejudice from counsel's failure to seek a continuance based on the possible passage of the First Step Act, and Chevallier's claim fails.

Next, Chevallier argues that his counsel was ineffective by failing to maintain her oral motion to continue the sentencing hearing. According to Chevallier, counsel was not prepared to challenge the advisory guideline calculation at sentencing. See [D.E. 1621] 22–25.

The record belies Chevallier's argument and demonstrates that counsel made an objectively reasonable decision to proceed with the sentencing hearing when she learned that the United States would not seek to increase Chevallier's base offense level above 32 despite evidence of additional drug weight. See Sentencing Tr at 2–9. Moreover, counsel's performance concerning the drug weight objection and leadership objection was not deficient. See Strickland, 466 U.S. at 687–91; Sentencing Tr. at 12–94. Thus, this claim fails as to performance.

Alternatively, Chevallier has not plausibly alleged prejudice. As mentioned, the court announced that it would impose the same 360-months sentence as an alternate variant sentence pursuant to 18 U.S.C. § 3553(a). See Sentencing Tr. at 107; see also Hargrove, 701 F.3d at 161–63; Savillon-Matute, 636 F.3d at 123–24; Keene, 470 F.3d at 1348–50. Thus, there was no prejudice from counsel's decision to withdraw her oral motion to continue the sentencing hearing. See Sears, 561 U.S. at 955–56; Glover, 531 U.S. at 202–04; Strickland, 466 U.S. at 691–96.

Finally, Chevallier alleges that his counsel was ineffective by failing to file a motion to suppress a Title III surveillance log. See [D.E. 1669] 2. Where an ineffectiveness claim is based on counsel's failure to file a motion to suppress, Strickland's "deficient performance prong" requires

7

"that an unfiled motion would have had some substance." Grueninger v. Dir., Va. Dept. of Corr., 813 F.3d 517, 524–25 (4th Cir. 2016) (quotation omitted); see Tice v. Johnson, 647 F.3d 87, 104 (4th Cir. 2011). "And the prejudice prong in such cases has two distinct components, with the petitioner required to show both (1) that the motion was meritorious and likely would have been granted, and (2) a reasonable probability that granting the motion would have affected the outcome of the trial." Grueninger, 813 F.3d at 525; Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Tice, 647, F.3d at 104.

The court rejects Chevallier's argument as to performance and prejudice. This case did include Title III wiretap evidence. Chevallier's conclusory allegation, however, does not plausibly allege a basis for counsel to attack the Title III wiretap authorization and any resulting log of calls, including any calls on which Chevallier discussed his drug dealing. Moreover, in light of the overwhelming evidence against Chevallier arising from non-Title III evidence, Chevallier has not plausibly alleged prejudice. Thus, the claim fails as to performance and prejudice. See Strickland, 466 U.S. at 687–96.

After reviewing the claims presented in Chevallier's motion, the court finds that reasonable jurists would not find the treatment of Chevallier's claims debatable or wrong and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

### III.

In sum, the court GRANTS respondent's motion to dismiss [D.E. 163], DISMISSES petitioner's section 2255 motion [D.E. 1620], and DENIES a certificate of appealability.

8

SO ORDERED.  This ⟨2⟩ day of September, 2022.

JAMES C. DEVER III
United States District Judge

**9**